IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:19-cr-20146-MSN |
| | ) | |
| MICHAEL FRUITTICHER, | ) | |
| | ) | |
| Defendant. | ) | |

REPORT AND RECOMMENDATION ON MOTION TO SUPPRESS

Before the Court is Defendant Michael Fruitticher's Motion to Suppress, filed September 30, 2022. (ECF No. 113.) District Judge Mark S. Norris referred the motion to the undersigned for report and recommendation on June 7, 2023. (ECF No. 131.) The United States responded in opposition on July 6, 2023. (ECF No. 132.) After granting a series of requests from the parties for continuances, the Court held a hearing on October 19, 2023.[1] (ECF No. 148.) Based on the statements of counsel and the entire record in this case, the Court recommends that the motion be denied.

**PROPOSED FINDINGS OF FACT**[2]

The investigation underlying this case began on May 3, 2019, when Fruitticher's then-wife, Leigh Fruitticher, and his stepdaughter, B.S., reported to Detective Booker of the

---

[1] The hearing was limited to oral argument, with no evidence submitted.

[2] At the hearing, the United States stated that it "agree[d] with the facts that the defendant set forth." The Court therefore relies on the facts as stated in Fruitticher's motion (ECF No. 113) and the exhibits thereto (ECF No. 113-1), as well as additional facts relayed by the parties during oral argument.

Millington Police Department that Fruitticher had been raping B.S. for the past nine or ten years, since she was eight or nine years old, and as recently as April 2019. (ECF No. 113-1, at 5.) B.S. also stated that Fruitticher forced her to text him through an app and send him nude photographs and videos of herself, some of which involved the performance of sexual acts, and that Fruitticher took photographs and videos of her during incidents of abuse, throughout the years of the abuse, using different cellular telephones that were still in his possession. (*Id.*) Ms. Fruitticher told the officers that Fruitticher had taken "PC Towers, laptops, cell phones, SD Cards, USB Cards, Hard drives, and . . . their security box that runs the security system in their residence" and that he "took all these items into his vehicle, 2008 Blue Dodge Ram 1500." (*Id.*)

On May 13, 2019, Detective Booker and other officers went to Fruitticher's place of employment, the Memphis Fire Station at 6675 Winchester Road, Memphis, Tennessee, to serve a domestic assault warrant on Fruitticher. (ECF No. 113-1, at 1.) The officers took Fruitticher into custody and found two cellular telephones on his person. (*Id.*) They also seized his 2008 Dodge Ram pickup truck, which was in the parking lot of the fire station. (*Id.*; ECF No. 113 ¶ 2.) The officers performed an inventory search of the truck, finding a firearm inside. (ECF No. 113-1, at 1.) They then had the truck towed to the Millington Police Department, where they held the truck while they applied for a warrant to search it. (*Id.*) The officers interviewed Fruitticher, who told them that he had been married almost ten years, that the marriage was "rocky" throughout, and that he believed B.S. was bipolar. (*Id.*)

The officers obtained the search warrant on May 16, 2019. (*Id.* at 3.) The affidavit supporting the warrant details the information provided by Ms. Fruitticher and B.S. to the officers on May 3rd, as discussed above, including that Fruitticher had taken electronic devices from the home and placed them in his Dodge Ram truck. (*Id.* at 5.) The affidavit does not

indicate when Fruitticher put the devices in his truck. The affidavit then states: "It is believed that some or all of the photos and videos of the sexual abuse are stored on devices that Fruitticher took from the residence and some of these devices may be inside his vehicle, 2008 Blue Dodge Ram 1500." (*Id.*)

Upon obtaining that warrant, on May 16, 2019, the officers searched the truck and recovered two laptops, a storage device, three cellular telephones, two SD cards, and a dash cam, at least some of which contained photographs of the victim. (*Id.* at 9.)

On May 31, 2019, Fruitticher was charged via a criminal complaint alleging violations of 18 U.S.C. § 2251(a), production of sexually explicit images of a minor, and 18 U.S.C. § 2252(a)(4)(B), possession of sexually explicit images of a minor. (ECF No. 1.) On June 27, 2019, a federal grand jury returned an indictment charging Fruitticher with production of child pornography in violation of 18 U.S.C. § 2251(a) and (e) and possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). (ECF No. 14.) On September 8, 2022, the grand jury returned a superseding indictment, asserting the same violations. (ECF No. 108.)

## PROPOSED CONCLUSIONS OF LAW

Fruitticher seeks suppression of the fruits of an illegal search unsupported by probable cause. He first argues that the warrantless seizure of his truck was unconstitutional. He then argues that the warrant subsequently obtained to search the truck was not supported by probable cause.

### I. The Warrantless Seizure

Fruitticher argues that, when the officers towed his truck from the fire station to the police department, they did so without a warrant and without any applicable exception to the

warrant requirement.[3]  "The government has the burden of proving the legality of a warrantless seizure." *United States v. Saddler*, 498 F. App'x 524, 527 (6th Cir. 2012) (citing *United States v. Beal*, 810 F.2d 574, 577 (6th Cir. 1987)).

### A. The Automobile Exception

"[W]here law enforcement authorities have both probable cause to believe that a container holds contraband or evidence of a crime and the 'exigencies of the circumstances demand it,' seizure of the container pending issuance of a warrant to examine the contents has been upheld." *Saddler*, 498 F. App'x at 527 (quoting *United States v. Place*, 462 U.S. 696, 701 (1983)); *see also id.* ("Probable cause . . . can support the detention of property without a warrant, if the exigencies demand it or some other recognized exception to the warrant requirement is present." (quoting *United States v. Avery*, 137 F.3d 343, 349 (6th Cir. 1997))). The United States must therefore demonstrate (1) that the officers had probable cause to believe that evidence of a crime would be found in Fruitticher's truck, and (2) that the automobile exception to the warrant requirement justified the warrantless seizure.

### 1. *Probable Cause*

The United States has satisfied its burden of proving that the officers had probable cause to seize Fruitticher's truck. "'Probable cause is defined as reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion,' and is found to exist when there is 'a "fair probability" that evidence of a crime will be located on the premises of the proposed search.'" *United States v. Jackson*, 470 F.3d 299, 306 (6th Cir. 2006) (quoting *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990); *United States v. Jenkins*, 396 F.3d 751, 760

---

[3] Fruitticher confirmed at the hearing that he does not challenge the pre-tow inventory search of the truck, during which officers found and seized a firearm.

4

(6th Cir. 2005)). "The court's determination of whether probable cause existed at the time of the [seizure] is a commonsense, practical question to be judged from the totality-of-the-circumstances." *United States v. Banks*, 684 F. App'x 531, 535 (6th Cir. 2017) (quoting *United States v. Smith*, 510 F.3d 641, 648 (6th Cir. 2007)).

      Here, before seizing Fruitticher's truck on May 13th, Detective Booker had met with Ms. Fruitticher and B.S. on May 3rd and had heard B.S.'s allegations that Fruitticher had raped her for at least nine years, beginning when she was eight or nine years old. B.S. provided extensive and specific details about the alleged assaults. (*See* ECF No. 113-1, at 5.) B.S. also told Detective Booker that Fruitticher had, for years, taken photographs and videos of her performing sexual acts, using various cellular telephones still in his possession. Ms. Fruitticher told Detective Booker that Fruitticher had taken various electronic devices capable of data storage from the home and put them in his truck. Based on this information, Detective Booker had probable cause to believe that Fruitticher had evidence of possession and production of child pornography in his truck.

      Fruitticher counters that the United States has no evidence that Ms. Fruitticher told Detective Booker *when* Fruitticher placed the storage devices in his truck, such that the officers lacked probable cause to believe that the devices were still in his truck on May 13th—that is, that the information provided by Ms. Fruitticher was stale.[4] Indeed, the United States has offered no proof as to whether Ms. Fruitticher told the officers when Fruitticher put the devices in his truck or, if she did, how recently that transfer occurred, and thus that information may have been stale. "[S]tale information cannot be used in a probable cause determination." *United States v.*

---

[4] Fruitticher makes this argument in connection with his position that the search warrant ultimately issued to search the truck lacked probable cause. Because the probable cause analysis arises in this context as well, the Court considers Fruitticher's arguments here too.

5

*Frechette*, 583 F.3d 374, 377–78 (6th Cir. 2009) (citing *United States v. Spikes*, 158 F.3d 913, 923 (6th Cir. 1998)).

> In analyzing whether information is stale, this court considers the following factors: (1) the character of the crime (chance encounter in the night or regenerating conspiracy?), (2) the criminal (nomadic or entrenched?), (3) the thing to be seized (perishable and easily transferrable or of enduring utility to its holder?), and (4) the place to be searched (mere criminal forum of convenience or secure operational base?).

*Id.* at 378 (citing *United States v. Abboud*, 438 F.3d 554, 572–73 (6th Cir. 2006)).

Each of these factors "point[s] toward freshness in a typical child pornography case: 'child pornography is not a fleeting crime' but rather 'carried out in the secrecy of the home and over a long period' (the first, second, and fourth factors); and 'images of child pornography can have an infinite life span' when traded digitally (the third factor)." *United States v. Williams*, 787 F. App'x 875, 878 (6th Cir. 2019) (citing *Frechette*, 583 F.3d at 378–79). And so too in this case. As to the first three factors, the crimes alleged occurred over many years; Fruitticher was married for ten years and thus entrenched as Ms. Fruitticher's husband and B.S.'s stepfather; and the devices at issue, including computers, hard drives, and other storage devices, are of enduring utility to their holder, as are the images they contain.

The fourth factor is closer in this case but still satisfied. Fruitticher had removed the devices from his home, and, when he was arrested, he only had two cellular telephones on his person. Thus, on May 13th, the majority of the devices identified by Ms. Fruitticher were neither in Fruitticher's home nor on his person. Fruitticher's truck was a reasonably likely and secure alternative to those two locations. It was therefore reasonable for the officers to believe that Fruitticher kept the devices in his truck, regardless of the amount of time that had passed since Ms. Fruitticher saw him put the devices in the truck.

Fruitticher is correct that the evidence currently before the Court establishes only that Fruitticher placed the devices in his truck at some point on or before May 3rd and that the officers therefore could not have been certain that the devices were still in the truck on May 13th. Certainty, however, is not required. Based on what the officers knew at the time about Fruitticher and the allegations against him, they had reasonable grounds to believe that there was a fair probability that they would find the devices in Fruitticher's truck. The United States has thus established probable cause.

    2. *Application of the Exception*

The automobile exception provides that "officers may search a vehicle without a warrant if they have 'probable cause to believe that the vehicle contains evidence of a crime,'" due to the "ready mobility' of the automobile, which create[s] 'an exigency sufficient to excuse failure to obtain a search warrant once probable cause to conduct the search [is] clear,'" and "the lesser expectation of privacy resulting from its use as a readily mobile vehicle." *United States v. Loines*, 56 F.4th 1099, 1110–11 (6th Cir. 2023) (quoting *Smith*, 510 F.3d at 647; *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996)). Fruitticher argues the exception does not apply because his truck was not readily mobile—he was in custody, the truck was parked in a secure lot at the fire station, and nothing indicated that any evidence found in the truck would disappear if the officers had left it where it was instead of towing it away. At the hearing, Fruitticher further argued that the officers could have prohibited anyone from approaching the truck and could have controlled the ingress and egress of the parking lot to further protect the contents of the truck.[5] The United States counters that seizure of the truck to preserve evidence was necessary because "Fruitticher

---

[5] Fruitticher conceded that these actions would have effectively seized the truck but argued that such seizure would have been less intrusive than towing the truck.

had confederates able to move the car and remove the incriminating evidence." (ECF No. 132, at 3.)

The automobile exception, however, "has no separate exigency requirement." *Maryland v. Dyson*, 527 U.S. 465, 466 (1999) (per curiam). "[B]oth [the Sixth Circuit] and the Supreme Court have reiterated on numerous occasions that the automobile exception is justified not only by the exigency created by the 'ready mobility' of vehicles, but also by the lesser expectation of privacy operators have in their vehicles." *Smith*, 510 F.3d at 650 (citing *California v. Carney*, 471 U.S. 386, 391 (1985); *United States v. Graham*, 275 F.3d 490, 509 (6th Cir. 2001)); *see also Loines*, 54 F.4th at 1111 ("More recent cases no longer require that the automobile exception rest on an independent showing of exigency . . . ."); *United States v. Witherspoon*, No. 21-4167, 2022 WL 16915763, at *2 (6th Cir. Nov. 14, 2022) (citing *Dyson*, 527 U.S. at 466–67) ("The automobile exception requires nothing more [than probable cause], and in particular does not require a time-based or travel-based exigency."); *United States v. Vance*, Nos. 20-5819/5820, 2021 WL 5133250, at *4 (6th Cir. Nov. 4, 2021) ("[N]or does it depend on a reviewing court's assessment of the likelihood . . . that the car would have been driven away, or that its contents would have been tampered with, during the period required for the police to obtain a warrant." (quoting *Michigan v. Thomas*, 458 U.S. 259, 261 (1982) (per curiam))); *United States v. Galaviz*, 645 F.3d 347, 355 (6th Cir. 2011) ("[T]he automobile exception need not rest on an independent showing of exigency, because '[e]ven in cases where an automobile was not immediately mobile, the lesser expectation of privacy resulting from its use as a readily mobile vehicle justified application of the vehicular exception.'" (quoting *Smith*, 510 F.3d at 647)).[6] The

---

[6] In *Galaviz*, the Sixth Circuit found the search of the vehicle permissible under the automobile exception but "note[d] that in cases like this—where there is no risk that the car will be moved and where the [evidence to be seized] poses no immediate danger to officers or others—the

officers' probable cause to believe Fruitticher's truck contained evidence of a crime was therefore sufficient to justify its warrantless seizure.

Fruitticher attempts to resist this authority by relying on *Coolidge v. New Hampshire*, 403 U.S. 443 (1971). In *Coolidge*, the Supreme Court found the automobile exception announced in *Carroll* to be inapplicable because officers could have secured a warrant—that is, "no exigent circumstances justified the police in proceeding without a warrant." *Id.* at 461–64. In so holding, the Supreme Court found that

> there is nothing in this case to invoke the meaning and purpose of the rule of Carroll v. United States—no alerted criminal bent on flight, no fleeting opportunity on an open highway after a hazardous chase, no contraband or stolen goods or weapons, no confederates waiting to move the evidence, not even the inconvenience of a special police detail to guard the immobilized autobile [sic].

*Id.* at 462. The Sixth Circuit has made clear, however, that "reliance on *Coolidge* is misplaced, in light of more recent developments in the Supreme Court's jurisprudence," namely the "additional justification for warrantless car searches" articulated in *Carney* based on the lessened expectation of privacy associated with cars. *Graham*, 275 F.3d at 509. Moreover, as the United States argued at the hearing, Fruitticher's truck was parked at his fire station, and it was reasonable for officers to worry that his co-workers might have moved the truck or removed evidence from it.[7] In short, the United States has demonstrated probable cause to seize the truck, and thus the automobile exception applies.

---

preferred course of action would be for officers to secure the car and obtain a warrant before forcing entry." 645 F.3d at 357 n.7. That preferred course is, of course, the precise action the officers took in this case.

[7] Fruitticher argued at the hearing that the United States has put forth no proof that he had any confederates willing to remove evidence from his truck or even that his truck had an engine. The United States is not, however, required to produce such proof—the appropriate inquiry is whether the officers who made the seizure decision that day had a reasonable basis to conclude that the truck or its contents could be removed based on the totality of the circumstances then

B.        The Inevitable Discovery Rule

The inevitable discovery rule "allows for the admission of evidence that would have been discovered even without the unconstitutional source"—here, the warrantless seizure of the truck. *United States v. Waide*, 60 F.4th 327, 341 (6th 2023) (quoting *United States v. Cooper*, 24 F.4th 1086, 1091 (6th Cir. 2022)).  "The doctrine flows from the deterrence goals underpinning the exclusionary rule itself: If the same evidence surely would have been found without the illegality, 'then the deterrence rationale has so little basis that the evidence should be received.'" *Cooper*, 24 F.4th at 1091 (quoting *Nix v. Williams*, 467 U.S. 431, 444 (1984)).  The rule "has been repeatedly employed when, after seizing evidence during an illegal search, police obtain and execute a search warrant based on probable cause developed before the search." *Id.* (citing *United States v. Bowden*, 240 F. App'x 56, 61 (6th Cir. 2007); *United States v. Keszthelyi*, 308 F.3d 557, 573–75 (6th Cir. 2002)).  "That test necessarily involves some hypothesizing.  We must ask: '[V]iewing affairs as they existed at the instant before the unlawful [seizure], what would have happened had the unlawful [seizure] never occurred[?]'" *Id.* at 1092 (quoting *United States v. Kennedy*, 61 F.3d 494, 498 (6th Cir. 1995)).

At the hearing, Fruitticher argued that the United States has submitted no proof that, but for the illegal seizure, the evidence in his truck would have been recovered upon execution of the search warrant on May 16, 2019.  Due to the hypothetical nature of the inquiry, however, such proof is unlikely to be found.  Rather, the relevant inquiry is what likely would have happened if officers had not seized the truck on May 13th when they arrested Fruitticher.  The most likely

---

existing.  *See Smith*, 510 F.3d at 648 ("In determining whether there was probable cause, the court does not look to events that occurred after the search or to the subjective intent of the officers; rather, the court looks at the 'objective facts known to the officers at the time of the search.'" (quoting *Smith v. Thornburg*, 136 F.3d 1070, 1075 (6th Cir. 1998))).

occurrence is that officers would have acted more quickly in securing the search warrant and would have monitored the truck to see if anyone attempted to access it in the interim. Importantly, a search warrant ultimately was secured (though not until May 16th, the exigency having been diminished due to the seizure of the truck), and there is no dispute that the probable cause supporting the search warrant was based solely on facts developed before the seizure. "[W]hat counts is whether the actual illegal [seizure] had any effect in producing the warrant"; here, it did not. *Murray v. United States*, 487 U.S. 533, 542 n.3 (1988). As such, the inevitable discovery rule applies.

    Moreover, Fruitticher's positions are at odds with each other. The only way the evidence in Fruitticher's truck would not have been discovered upon execution of the search warrant is if someone[8] moved the truck from the fire station parking lot or emptied its contents between May 13th and 16th. Thus, seizure of the automobile was either necessary to preserve the evidence inside or was unnecessary because the evidence would have been preserved until the search. In other words, Fruitticher cannot have it both ways. Either the mobile nature of his truck necessitated its seizure on May 13th, demonstrating the propriety of applying the automobile exception, or seizure was unnecessary because the truck and the evidence inside would have remained untouched until execution of the search warrant on May 16th, demonstrating that the evidence would have been inevitably discovered.

    The United States has demonstrated that the automobile exception to the warrant requirement renders the seizure of Fruitticher's truck lawful. In the alternative, the evidence inside the truck would have been inevitably discovered pursuant to the search warrant, rendering

---

[8] Fruitticher indicated at the hearing that he was only in custody for twenty-four hours following his arrest on May 13th, and so that "someone" could have been Fruitticher himself.

11

application of the exclusionary rule inappropriate. Either way, the warrantless seizure of the truck does not justify suppression in this case.

## II. The Search Warrant

Fruitticher argues in the alternative that, even if the seizure of his truck was lawful, the later-obtained search warrant was not supported by probable cause. This time, Fruitticher bears the burden of proving that the search warrant was issued without probable cause. *See United States v. Rodriguez-Suazo*, 346 F.3d 637, 643 (6th Cir. 2003). Because the affidavit supporting the warrant request details the same information B.S. and Ms. Fruitticher told Detective Booker on May 3rd, the analysis above applies equally here. As discussed, the detailed information B.S. provided about the years of sexual abuse allegedly inflicted by Fruitticher, along with his documentation of that abuse, constitutes probable cause to believe that Fruitticher had evidence of possession and production of child pornography.

As to whether the affidavit provides probable cause that such evidence would be found in Fruitticher's truck, Fruitticher's staleness argument again comes into play. The first three *Spikes* factors are unchanged from the analysis above and weigh against a finding of staleness—the alleged child pornography crimes were committed many times over many years, showing the recurring nature of the crimes; Fruitticher was not nomadic but rather entrenched in his life; and the electronic storage devices to be seized are of enduring utility, not perishable. *See Williams*, 787 F. App'x at 878 (citing *Frechette*, 583 F.3d at 378–79).

The analysis of the fourth factor, however, is even closer as to the information disclosed in the search warrant affidavit than it was when considering the information known to the officers at the time of arrest on May 16th. The place to be searched was Fruitticher's truck, which, as described in the affidavit, is where Ms. Fruitticher said Fruitticher had placed the

12

storage devices, though the affidavit does not indicate how recent that transfer was. Thus, the judicial commissioner was presented on May 16th with a request to search a vehicle that had contained evidence of crime at some undisclosed point on or before May 3rd. Based on the four corners of the affidavit, Fruitticher could have put the devices in his truck weeks or months earlier, with the likelihood that the devices would still be found in the truck decreasing as the amount of time increased. In addition, unlike the information known to the officers at the time of arrest, the affidavit provides no basis to conclude that Fruitticher's truck was a "secure operational base," as opposed to a "mere criminal forum of convenience" for transporting the devices from Fruitticher's home to some other location. *See Frechette*, 583 F.3d at 78.

The nexus identified in the affidavit is sufficient, however, to satisfy the *Leon* good-faith exception. Under that exception, "even if the search warrant were found to be fatally defective, the evidence would not be suppressed 'if the seizure was based on reasonable, good faith reliance on the warrant.'" *United States v. Hill*, 27 F.4th 1155, 1192 (6th Cir. 2022) (quoting *United States v. Abboud*, 438 F.3d 554, 578 (6th Cir. 2006)). The affidavit need only "establish a 'minimally sufficient nexus between the illegal activity and the place to be searched'"—"*some* connection, regardless of how remote it may have been," "some modicum of evidence, however slight." *United States v. Christian*, 925 F.3d 305, 313 (6th Cir. 2019) (en banc) (quoting *United States v. Brown*, 828 F.3d 375, 385 (6th Cir. 2016); *United States v. White*, 874 F.3d 490, 497 (6th Cir. 2017)); *White*, 874 F.3d at 497 (quoting *United States v. Laughton*, 409 F.3d 744, 749–50 (6th Cir. 2005)). "The 'good faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization.'" *Id.* (quoting *United States v. Leon*, 468 U.S. 897, 922–23 (1984)). "[T]he burden rests on the government to prove that [the executing officer's]

13

reliance on a warrant was objectively reasonable." *United States v. Linares*, No. 13-20368, 2015 WL 3870959, at *9 (E.D. Mich. May 4, 2015) (quoting *United States v. Rissew*, 580 F. App'x 35, 36 (2d Cir. 2014)).

The "sole purpose" of the exclusionary rule "is to deter future Fourth Amendment violations." *Davis v. United States*, 564 U.S. 229, 236 (2011) (citing, e.g., *Herring v. United States*, 555 U.S. 135, 141 (2009)). Its operation is thus limited "to situations in which this purpose is 'thought most efficaciously served.' Where suppression fails to yield 'appreciable deterrence,' exclusion is 'clearly . . . unwarranted.'" *Id.* (quoting *United States v. Calandra*, 414 U.S. 338, 348 (1974); *United States v. Janis*, 428 U.S. 433, 454 (1976)). In addition to deterrence, "[t]he analysis must also account for the 'substantial social costs' generated by the rule," which "almost always requires courts to ignore reliable, trustworthy evidence bearing on guilt or innocence." *Id.* (quoting *Leon*, 468 U.S. at 907). Thus, "[f]or exclusion to be appropriate, the deterrence benefits of suppression must outweigh its heavy costs." *Id.* (citing *Herring*, 555 U.S. at 141; *Leon*, 468 U.S. 910).

That "cost-benefit analysis" focuses on "the 'flagrancy of the police misconduct' at issue." *Id.* at 238 (quoting *Leon*, 468 U.S. at 909). "When the police exhibit 'deliberate,' 'reckless,' or 'grossly negligent' disregard for Fourth Amendment rights, the deterrent value of exclusion is strong and tends to outweigh the resulting costs." *Id.* (quoting *Herring*, 555 U.S. at 144). "But when the police act with an objectively 'reasonable good-faith belief' that their conduct is lawful, . . . the 'deterrence rationale loses much of its force' . . . ." *Id.* (quoting *Leon*, 468 U.S. at 919). A warrant "'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable'"—a "bare bones affidavit"—"shows that the officer recklessly relied on the judge's decision that probable cause existed for the warrant." *United*

14

States v. Reed, 993 F.3d 441, 450 (6th Cir. 2021) (quoting *Leon*, 468 U.S. at 923; *White*, 874 F.3d at 496).

The affidavit in this case provides particularized facts that present at least some reasonable basis for believing that the electronic storage devices would be found in Fruitticher's truck. The affidavit detailed B.S.'s allegations on May 3, 2019, that Fruitticher had been raping her since she was eight or nine years old, providing specific details about the alleged assaults and relaying that Fruitticher had photographed and videoed her performing sexual acts for years using various cellular telephones still in his possession. (*See* ECF No. 113-1, at 5.) The affidavit also relayed Ms. Fruitticher's statements that Fruitticher had taken various electronic storage devices from their home and put them in his truck. (*Id.*)

The affidavit does not indicate when that transfer occurred, but the totality of the information provided in the affidavit is sufficient to support the affiant's belief, as stated in the affidavit, that the devices may have still been in the truck on May 16th. When Ms. Fruitticher's statement is read in context with the rest of the affidavit, it provides a reasonable basis to conclude that Fruitticher's transfer of the devices to his truck was recent. For example, B.S. told investigators that Fruitticher had raped her as recently as April 2019, that he had used cell phones to record the abuse "throughout the years," and that the cell phones are still in his possession, and Ms. Fruitticher told investigators that cell phones were among the devices Fruitticher had moved to his truck—all suggesting that this transfer was recent. Furthermore, the fact that Fruitticher removed the devices from his home, in conjunction with other recent activity described in the affidavit—including the alleged rape only a month prior—and the "secrecy" associated with child pornography crimes, provides at least a modicum of evidence that the devices would still be found in Fruitticher's truck. *See United States v. Haney*, No. 07-cr-20313,

2012 WL 1657109, at *2 (W.D. Tenn. May 10, 2012) (acknowledging that child pornography crimes are "generally carried out in the secrecy of the home and over a long period" and that the evidence is "likely to be kept for a long time," but declining to find good faith where the affidavit gave no indication of timing or a temporal reference point at all (quoting *United States v. Paull*, 551 F.3d 516, 522 (6th Cir. 2009); *United States v. Wagers*, 452 F.3d 534, 540 (6th Cir. 2006))); *see also United States v. Bender*, 423 F. Supp. 3d 473, 480–81 (M.D. Tenn. 2019) (finding good faith in a request to search the defendant's home, though the only "modicum of evidence" of nexus was the odor of marijuana from the home detected twenty days prior, but finding no good faith to search the defendant's car, where the affidavit failed to articulate any nexus to any illegal activity).

In light of the foregoing, when considering the affidavit as a whole, it is not bare bones or so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable, such that the officers were reckless in relying on its issuance. *See Christian*, 925 F.3d at 312 ("We reserve [the bare bones] label for an affidavit that merely 'states suspicions, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge.'" (quoting *United States v. Washington*, 380 F.3d 236, 241 n.4 (6th Cir. 2004))). The affidavit set forth sufficient indicia of probable cause to give the officers an objectively reasonable basis to rely on issuance of the warrant in conducting the search of Fruitticher's truck. Because the officers acted in good faith, suppression is unwarranted.

## **RECOMMENDATION**

For the foregoing reasons, this Court recommends that the motion to suppress be denied.

Respectfully submitted this 21st day of November, 2023.

s/Annie T. Christoff
ANNIE T. CHRISTOFF
UNITED STATES MAGISTRATE JUDGE

## **NOTICE**

Within fourteen (14) days after being served with a copy of this report and recommendation, a party may serve and file written objections to the proposed findings and recommendations. Fed. R. Crim. P. 59(b)(2).  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  Failure to file objections within fourteen (14) days may constitute waiver of objections, exceptions, and further appeal.